We'll hear argument next in No. 22-220, United States v. Jennings. I'll wait for counsel to come to the front of the room. Okay, Ms. Noonan, whenever you're ready. Thank you. Good morning. May it please the Court, my name is Allegra Noonan and I represent Derek Jennings along with my colleague Noam Beall. We are here on appeal regarding the application of the four-level gun trafficking enhancement to Mr. Jennings' sentence. The core of this dispute is whether Mr. Jennings knew or had reason to believe that the CI who purchased the firearms at issue intended to use or dispose of the firearms unlawfully. He did not, and there is insufficient evidence in the record to conclude otherwise. Now, just so that we're clear, the district court had to make that finding by a preponderance, right? Your Honor, the burden is, or the standard is a preponderance of the evidence. Our review of it is clear error? The review of the factual inferences is clear error, though the guidelines calculation is to no avail. Of course. All right, so why don't you tell us why it was clear error for the district court to make a preponderance finding that your client did have reason to believe they would be disposed of unlawfully? Yes, Your Honor. So to begin, I would just note that the court didn't make a specific finding at sentencing as to this enhancement. Rather, it adopted the guidelines calculation as calculated in the PSR, which did apply the four-level gun trafficking enhancement.  The PSR says, based on the nature of the firearm transactions, which included stolen firearms and a firearm with an obliterated serial number, there is a preponderance of the evidence that both Walker and Jennings knew or had reason to believe their actions would result in the transfer of the firearms to an individual who intended to use or dispose of them unlawfully. So, the nature of the transactions, stolen firearms and an obliterated serial number, why couldn't the district court conclude by a preponderance of the evidence that Jennings would have seen the obliterated serial number, for example? Your Honor, there is no evidence in the record that Mr. Jennings knew that the serial number on that one particular gun was obliterated. And I'll just note that that was only the case with one gun out of 16. Moreover, there's no evidence in the record that Mr. Jennings took any steps to obliterate that serial number. Indeed, the fact that… Well, he doesn't have to do it himself. He just needs to be aware that it's there, right? I mean there's a picture of it in the record. It's pretty obvious. There's a big scratch on the side of the gun, right? Your Honor, so… We're just talking about a preponderance. Why couldn't the district court conclude by a preponderance that he would have seen that? Understood, Your Honor. So, it may be allowable for the district court to conclude that Mr. Jennings would have seen the serial number. But I would note that there is no case that finds that the enhancement applies based on an obliterated serial number alone. Well, that's not alone. I mean that's not all there is here. As Judge Menasche pointed out, these are off-the-book sales. The guns – there were a significant number of guns. They're bought over a short time, many of the same model. And the defendant wipes his prints, wears gloves while he's conducting the transactions. All of these would seem to support an inference that he knows he's engaged not only in an unlawful transaction himself but that his purchaser is looking to buy guns to deal with unlawfully rather than lawfully. Your Honor, on that… It's more likely than not that that's the case. That's the preponderance standard, that it's more likely than not that that's what he understood. That is the standard. But the inferences drawn from the facts in the record need to be supported by evidence. And the mere fact that… Which I just cited to you. Yes, Your Honor. And in response to what you've cited, I would just point out the mere fact that the sale of the gun is unlawful and that the defendant knows that the sale of the gun is unlawful or that the purchaser's purchase of the gun is unlawful is not sufficient to apply the enhancement. Well, that's fair enough. I think that's a legitimate point. But the problem is that the CI bought nine of the same model. I mean, it's hard to… Isn't it a fair inference if you… I mean, I like my shotgun at home, but I don't have nine of them. Why does someone buy nine of the same model? Your Honor… In fact, let me just add before you answer. The CI also said that the person to whom he was going to transfer the guns planned to set up a sweatshop like a big market. Right. So isn't that even an explicit statement there was going to be further sales? So you put those two together. Isn't there a reasonable inference that someone's going to sell those guns? And if you bought a gun illegally, you cannot sell a gun legally, can you? Your Honor, well, I would start by saying that the fact that a stolen gun is being sold does not mean that it's being used or disposed of unlawfully. I'm not… I wasn't suggesting that any of them… that there was evidence in the record about it being stolen. I was suggesting that there was evidence in the record of, A, multiple models of the same model. B, Judge Menashe talked about the sweatshop, so we know that there's some evidence of anticipation of subsequent sale. And the original purchase is illegal, is it not? Your Honor, the CI's purchase of the guns may be unlawful, but that alone is not sufficient. But let me address… Can an unlawful purchaser legally sell a gun? Your Honor… I think the answer is no. There are cases where the courts did consider the fact that the guns might be resold, and that alone was not sufficient to apply the enhancement. And on the number of guns that were sold… Okay, I'll give you that. What about the serial numbers? Didn't the CI refer to them as personals? The serial numbers, Your Honor, there's no evidence in the record that the comment, these were personals or this one was personal. Well, wait a second. He referred to the guns as personals. Your Honor, first… And as if they were his. No, Your Honor, I don't believe that that's a fair… That's not a fair inference? I don't believe that's a fair inference. When I talk about my personal cell phone, I'm talking about this. I'm not talking about someone else's cell phone, am I? Well, Your Honor, allow me to clarify on the personals comment because I think the comments in the video are important. He at first says these were personals about several guns. Then he says, well, this one was. We don't know which gun he was referring to. The fact that one of the guns had an obliterated serial number does not mean that the gun he was referring to when he said this one was a personal was that gun. We don't know that. Were the fact that the serial number was obliterated, was that unseeable? Your Honor, first I would just start by saying only one serial number was obliterated. Well, I understand that, but one's enough, isn't it? Your Honor, I would disagree that it's enough in a case where the defendant supplied other guns with serial numbers completely intact and visible. And it's distinguishable from cases where courts relied on the obliterated serial number because in those… Why does that matter? I mean, it shows his – he doesn't care. He's willing to traffic in obliterated serial number guns. He's willing to traffic in serial number guns, all of which supports an inference that he likely understands these are not going to be used for a lawful purpose. You see, it seems to me you want us to look at the evidence. You have an arguable case, but it's an argument on the facts in the light most favorable to you. To find clear error, we have to look at the facts in the light most favorable to the trial judge's finding. Your Honor, the clear error was that these factors, either the facts that the government relied on only show that Mr. Jennings may have known the sales were unlawful but not that they would – the firearms would be used or disposed of unlawfully. We've suggested to you that's not the case, but – okay. Well, you said a moment ago that – or in response to one of my questions that maybe the district judge could have determined by preponderance that he saw the obliterated serial number, but that would have only been one gun. I think you were about to say that trafficking one gun would not be enough for the enhancement. Is that right? Your Honor, well, it wouldn't be enough for the enhancement. Why is that? Because the enhancement only applies for three or more guns. Okay. All right. Well, we're going to hear back from you on rebuttal, but let's turn to the government. Mr. Wenzel. Thank you. Good morning, Your Honors, and may it please the Court. My name is Andrew Wenzel. I'm an assistant U.S. attorney in the Eastern District. As Your Honors have mentioned, the issue before the Court today is a straightforward one. Did the district court commit clear error when it applied the firearms trafficking enhancement in Section 2K2.1b5? And I submit to you the court committed no error whatsoever, let alone clear error, in finding by a preponderance of the evidence that this enhancement applied. As Your Honors noted, at sentencing, the district court had a video of a transaction between this defendant and a confidential informant. It also had a picture of a gun with an obviously obliterated serial number. The court considered all that evidence and reached its conclusion. The facts of this case were that the defendant traveled up from Georgia and sold 16 small caliber semi-automatic handguns to a confidential informant in a parked car. This happened over four separate occasions. The first three happened within a span of about three weeks, and then another one happened a couple months later. So each of these sales were for cash, small caliber handguns, to a confidential informant in a parked car, and the confidential informant then took the guns in a backpack or a plastic bag and left the location. Now, the first transaction between the defendant and the confidential informant, as I said, was captured on a crystal clear video. And the audio was also very crystal clear. And the court had that video and audio at sentencing, and on that video and audio, the confidential informant is telling the defendant, she, referring to another person that we was going to transfer these guns to, is going to set up a sweatshop. She's going to set up a big market. She'll have everything. He's telling this person, the defendant, that there's going to be a place where all these guns are going to be resold. This is all very clear on video. Additionally, on this video, the defendant is seen wiping the gun, wiping his fingerprints off the guns. He's also wearing gloves. Now, I submit to you and the district court found this, I believe, that the reason that that is done is because he knows. He knows, or at least he has reason to believe, that these guns are going to be used at some future transaction, potentially unlawful. You might wipe your fingerprints even if it's going to be used in something other than a transaction, right? It doesn't necessarily mean that you think there's going to be another transaction. Well, Your Honor, I think this defendant sold these guns to this confidential informant because he believed the confidential informant's story. He didn't think the confidential informant was going to turn these guns into law enforcement. Otherwise, he wouldn't have sold them to him. Right, so the important point is not that he was wiping his fingerprints but that he heard from the buyer, I'm going to transfer this to somebody who's going to set up a market. Correct. That's the key piece of evidence, it seems to me. That's one of the very key pieces of evidence, but as Your Honor's touched on, it's the totality of the evidence. There are so many different factors at play here that led just the district court to conclude without question that this enhancement applied. If Your Honors have no further questions, I'm willing to sit down. So thank you very much. Okay. Thank you, Mr. Wenzel. We'll hear back from Ms. Noonan on rebuttal. Thank you. I just want to note one thing. For the enhancement to apply, there need to be two or more guns. I believe I misspoke and said three, so I just want to clarify that. But the other thing I want to speak about is that there is nothing in the record about what this female officer intended to do with the guns. We don't know if she's a licensed firearms dealer. There's no information in the record on that. And the mere references to a sweatshop are similarly not clear. A sweatshop signifies that something might be manufactured. A reference to a market without more is not enough. And I want to be clear that in the government's brief, there was mention of a gun-selling sweatshop or a gun sweatshop. That was never what anyone said on the video, and only sweatshop was quoted, as in the government's brief. But I want to be clear, no one in that video said, we are going to resell these guns. Moreover, in green, the court noted that the guns might have been resold and did not apply the enhancement, because they might be resold to those who intended to use the guns in innocent pursuits. With respect to the fact that some of the guns may have been stolen or purchased unlawfully, I want to note that in moody, it was clear that the guns had been stolen. Everyone knew the guns had been stolen. They had come from a train robbery, and even there, the Seventh Circuit did not apply the trafficking enhancement. Can I just go back to the guideline again? Yes. So the guideline says that the defendant transported, transferred, otherwise disposed of two or more firearms, but he's eligible for the enhancement if he had reason to believe that that conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful or who intended to use or dispose of the firearm unlawfully. So he needs to be engaged in a transaction that involves two or more firearms, but actually the unlawful transfer can concern only one firearm. Is that not right? So, Your Honor, it's – I take it that your point is the transfer of any gun with an obliterated serial number. Right, so he did, in fact, dispose of two or more firearms. We know that. He did, Your Honor. He sold multiple firearms. He did. So my question to you earlier was, well, if he knew about the obliterated serial number, would that not be trafficking? But that by itself would mean that he knew or had reason to believe that his conduct would result in the transport, transport, or disposal of a firearm to an individual who intended to use or dispose of it unlawfully. Would it not? Your Honor, in response to that question, I would point you to the reasoning in Moody. There the government argued it would be a crime for this purchaser, the purchaser was someone who intended to eventually gift the gun to her adult children, it would be a crime for this purchaser to knowingly purchase a stolen gun. The Seventh Circuit rejected that argument, saying the mere fact that someone is going to possess a gun that they cannot possess lawfully, a stolen gun or, in this case, a gun with an obliterated serial number, is not enough. There has to be more. Right. I don't disagree with Moody, but the question is, is there proof here that then creates a reasonable inference that something is going to happen to at least one of those guns, sale to a felon, sale to or illegally dispose of a gun, in another way, a subsequent illegal sale, right? Your Honor. Simply buying the gun is not trafficking, right? Simply buying the gun is not trafficking. That's what Moody's all about. But there was no such proof that there was going to be subsequent illegal use or disposal. That's for us to figure out. Yes, Your Honor. Though we would say the evidence is not sufficient to support that. In every case cited by both the government and the appellant in this case, there were more facts to support the enhancement than there are here. And you've done so in a good brief. Thank you. May I just ask you, with this enhancement and his criminal history category of four, his guideline range was 57 to 71 months, correct? Yes. And that's not what Judge Azraq sentenced him to. She sentenced him to 36 months. That's correct. Explaining that she thought that she had to affect parity with some co-defendants. If he didn't have this enhancement, am I right that his guideline range would have been 37 to 46 months? If he didn't have this enhancement but had the criminal history of four, yes, that's correct. Right. Well, she thought he had the criminal history category of four. She thought the guidelines were correctly calculated, but she departed for other reasons. So basically, if I understand it, you want us to say that his guideline range is 37 to 46 months, still higher than what he got, and send it back to the district court to see what, if anything, she would do with a different guideline cap, guideline range to start with. Is that right? Yes, Your Honor. We would maintain that the guideline. Want a handicap where the judge would go below the 36 months? Your Honor, because the – Well, she did explain that it was based on her concern that he not be penalized disproportionately to co-defendants. Exactly, Your Honor, and also that his criminal history overestimated the seriousness of those charges. I hear you, and we'll decide the legal question. I think you, from a practical point of view, have to consider that it's not likely that your client would see a lower sentence in any event. All right. Thank you. Okay, thank you. Thank you very much. Nicely argued. Ms. Noonan, the case is submitted.